UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JESSIE YOUNG, | No. CV 04-7289-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security Administration, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 3, 2004, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on October 6, 2004. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 15, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on December 18, 1942. [Administrative Record ("AR") at 45.] He has obtained his GED, and has previous work experience as, among other things, a gas station cashier. [AR at 63, 68.]

On July 10, 2001, plaintiff protectively filed an application for Supplemental Security Income payments, alleging that he had been unable to work since March 1, 2001, due to various ailments, including diabetes, high blood pressure, shortness of breath, a congenital heart condition, and bad vision. [AR at 21, 45-47, 62.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on July 15, 2003, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 328-45.] On December 22, 2003, the ALJ determined that plaintiff was not disabled because he can perform at least light work, and is not precluded from performing his past relevant work as a gas station cashier. [AR at 21-24.] When the Appeals Council denied review on July 22, 2004, the ALJ's decision because the final decision of the Commissioner. [AR at 5-8.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the protective filing date of his application. [AR at 22.] At step two, the ALJ concluded that plaintiff has the severe impairments of diabetes mellitus, hypertension, history of congestive heart failure, chronic obstructive pulmonary disease, and renal insufficiency. [AR at 24.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [Id.] The ALJ further determined that plaintiff retains the residual functional capacity[1] to perform light work[2] not involving exposure to hazards or an excessive level of pulmonary irritants. [Id.] At step four, the ALJ determined that plaintiff is able to perform his past relevant work as a cashier at a gas station. [AR at 24.] The ALJ thus concluded that plaintiff is not disabled, and did not reach step five of the sequential analysis. [Id.]

/
/
/
/

**V.**

**THE ALJ'S DECISION**

---

[1]   Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[2]   Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff contends that the ALJ: 1. improperly determined that plaintiff could perform his past relevant work; 2. improperly determined plaintiff's residual functional capacity; and 3. improperly discredited plaintiff's testimony.  Joint Stipulation ("Joint Stip.") at 2-3.  The Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

**A.    PAST RELEVANT WORK**

The ALJ concluded that plaintiff remains capable of performing at least light work not involving exposure to hazards or excessive levels of pulmonary irritants, and as such, he is not precluded from the demands of his past work as a cashier at a gas station.  Plaintiff contends that the ALJ should have called a vocational expert ("VE") to assist in resolving the question of whether plaintiff's limitation on exposure to an excessive level of pulmonary irritants precludes his ability to work as a cashier at a gas station. Joint Stip. at 3-4.

The occupation of cashier-gas station is defined in the Dictionary of Occupational Titles ("DOT") at 915.477-010. Plaintiff does not argue that the ALJ applied an incorrect DOT number. Rather, he asserts that while the subject DOT classifies certain environmental conditions associated with the job, such as exposure to weather, temperature, and toxic caustic chemicals, it does not classify or describe pulmonary irritants such as those found in a gas station.[3] Since the ALJ did not resolve if "excessive" levels of pulmonary irritants exist at the gas station job, and the ALJ drew an inference that plaintiff asserts is "counterintuitive," a VE was needed.  The Court disagrees.

The ALJ determined at step four of the sequential analysis that plaintiff could perform his past relevant work.  At that step, plaintiff bore the burden of proving that he was disabled. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (a determination by the ALJ at step four of the sequential analysis that a plaintiff's impairment did not prevent him from performing past relevant work made it unnecessary to proceed to step five; no error in not calling a VE); Drouin, 966 F.2d

---

[3]    Plaintiff asserts that irritants found at a gas station include exhaust, gasoline vapor, road dust, and other vapors.  Joint Stip. at 4.

at 1257 (plaintiff has the burden of proving inability to perform past relevant work); Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002) ("At step four, [plaintiff] had the burden of showing that she could no longer perform her past relevant work."). The ALJ's reliance on the DOT to show the conditions at plaintiff's prior work was appropriate. See Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986). See also 20 C.F.R. § 416.966(d)(1) (the ALJ can take administrative notice of job information in the DOT, which is presumptively applicable to a claimant's past work). The Court will not replace the ALJ's finding that plaintiff can perform his past work, supported by the DOT, with what plaintiff refers to as intuition and "common sense" that a gas station contains irritants, when no evidence was presented by plaintiff to rebut the presumption that the DOT applies to his prior work. Indeed, plaintiff testified that it was cleaning materials used at the gas station where he worked that made him short of breath. [AR at 334.] He said nothing about the general gas station environment to which he now refers -- gas vapors, road dust -- causing him any difficulty. Plaintiff offered no other evidence to meet the "burdensome task of demonstrating" that his job was inaccurately evaluated in the DOT and its supplements. Villa, 797 F.2d at 798-99.

Neither did the ALJ fail to adequately develop the record in this regard. Although plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. Id. The ALJ's responsibility derives in part from the basic premise that disability hearings are not adversarial in nature. See Sims v. Apfel, 530 U.S. 103, 110-111, 120 S.Ct. 2080 (2000). It is also based on the regulatory directive that, in an administrative hearing, the ALJ "looks fully into the issues." 20 C.F.R. §§ 404.944 and 416.1444. See Pearson v. Bowen, 866 F.2d 809, 812 (5th Cir. 1989)(recognizing ALJ's "duty of 'full inquiry' under § 416.1444").

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. See Tidwell v. Apfel, 161 F.3d 599,

1  602 (9th Cir. 1998, as amended Jan. 26, 1999); Cox v. Califano, 587 F.2d 988, 991 (9th Cir.
2  1978); see also 20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3)(providing steps to obtain additional
3  evidence where medical evidence is insufficient to determine whether claimant is disabled); 20
4  C.F.R. §§ 404.1512(e) and 416.912(e) (providing measures for obtaining additional information
5  from treating doctors).  Where it is necessary to enable the ALJ to resolve an issue of disability,
6  the duty to develop the record may require consulting a medical expert or ordering a consultative
7  examination.  See 20 C.F.R. §§ 404.1519a and 416.919a; Armstrong v. Commissioner, 160 F.3d
8  587, 590 (9th Cir. 1998) (where there were diagnoses of mental disorders prior to the date of
9  disability found by the ALJ, and evidence of those disorders even prior to the diagnoses, the ALJ
10 was required to call a medical expert to assist in determining when the plaintiff's impairments
11 became disabling); Pearson, 866 F.2d at 812-13.

12        On the other hand, the ALJ is not obliged to undertake the independent exploration of every
13 conceivable condition or impairment a claimant might suffer.  An ALJ does not fail in his duty to
14 develop the record by not seeking evidence or ordering further examination or consultation
15 regarding a physical or mental impairment if no medical evidence indicates that such an
16 impairment exists.  See Pearson, 866 F.2d at 812 (requiring that claimant must "raise a suspicion
17 concerning such an impairment" before ALJ is required to discharge duty of full inquiry by ordering
18 a consultative examination); Breen v. Callahan, 56 Soc. Sec. Rep. Ser. 340, 1998 WL 272998 at
19 *3 (N.D. Cal. May 22, 1998) (noting that, in the Ninth Circuit, the ALJ's obligation to develop the
20 record is triggered by "the presence of some objective evidence in the record suggesting the
21 existence of a condition which could have a material impact on the disability decision").
22 Ambiguous evidence "triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan v.
23 Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288).

24        Here, plaintiff was evaluated by a consultative examiner who concluded that he is able to
25 work. In October, 2001, plaintiff was examined by Dr. Steven A. Moskowitz.  Plaintiff reported that
26 his diabetes mellitus was controlled with oral medication and insulin, which he takes daily.  He
27 noted shortness of breath and wheezing from time to time, which worsens with exertion.  While
28 a systolic murmur was present, plaintiff's heart had regular rate and rhythm.  He was diagnosed

with adult-onset diabetes mellitus, hypertension, a history of congenital heart disease, and a past history of congestive heart failure. Dr. Moskowitz noted that plaintiff's blood pressure appeared under control with medication. His "fine finger movement is intact," and he is "able to handle objects, manipulate objects, grab and grasp objects, pinch objects, and use both hands for holding small writing instruments or tools and buttoning buttons." Dr. Moskowitz concluded that plaintiff can stand or walk six hours in an eight hour work day, with appropriate breaks, and can lift 65 pounds occasionally and 55 pounds frequently. [AR at 106-09.] In addition, a Physical Residual Functional Capacity Assessment completed in November, 2001, concluded that plaintiff could occasionally lift 60 pounds and frequently lift 55 pounds, could stand and/or walk about six hours in an eight hour day and sit with normal breaks for about six hours in an eight hour day. Plaintiff was to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation, and was to avoid all exposure to unprotected heights. [AR at 129-36.] A visual acuity test performed in October, 2001, indicated that plaintiff's vision was corrected to 20/25 with glasses [AR at 111], and Dr. Arthur Edelstein concluded in January, 2002, that plaintiff's visual acuity was correctable to 20/20 right and 20/30 left. [AR at 139.] The ALJ relied on the state agency physicians' assessments to determine plaintiff's RFC, which in turn were based in part on the evaluations of Dr. Moskowitz and Dr. Edelstein. [AR at 23, 129-36, 174.] As the assessments were consistent with the evidence in the record, they serve as substantial evidence. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

While plaintiff contends that the testimony of a VE may have been helpful and relevant in a discussion of plaintiff's past work and whether an individual with plaintiff's limitations remains capable of performing such work, VE testimony is not required at step four. This is especially true where, as here, plaintiff's credibility was questioned (see section C, infra), and his testimony alone comprised the only evidence of the existence of allegedly disabling fumes at a gas station. [AR at 334.] The record thus contained no ambiguity on the issue of plaintiff's past work that would have triggered the ALJ's duty to further develop the record.

**B.    PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

Plaintiff next contends that the RFC found by the ALJ "lacks the support of substantial evidence," as the combination of his impairments "do not permit the inference that [plaintiff] could engage in the *sustained* requirements of light work." Joint Stip. at 8-9 (emphasis in original). Again, the Court disagrees.

Substantial evidence exists in the record to support the ALJ's RFC findings. In November, 1999, plaintiff was hospitalized complaining of, among other things, shortness of breath. He was diagnosed with congestive heart failure, chronic bronchitis, diabetes mellitus, and hypertension. [AR at 91-96.] Plaintiff's chest x-ray of November, 2001, was "unremarkable." [AR at 225.] A cardiology report from March 30, 2002, indicated that plaintiff had normal left ventricular size and systolic left ventricular function, diastolic dysfunction, and left ventricular hypertrophy, mild mitral regurgitation and mild pulmonary hypertension. [AR at 260-62.] Plaintiff was diagnosed at the Presbyterian Intercommunity Hospital in March, 2002, with shortness of breath secondary to chronic obstructive pulmonary disease, poorly controlled diabetes mellitus, and hypertension, among other things. [AR at 266-67.] A pulmonary consultation in March, 2002, concluded that plaintiff had, among other things, acute bronchitis, mild to moderate chronic obstructive pulmonary disease, chest tightness and dyspnea, as well as hypertension and diabetes mellitus. [AR at 273-75.] A report from February 19, 2003, indicated that plaintiff had not been taking his medications as instructed. Five days later, he indicated he was taking his medications and felt "a lot better." [AR at 183.] While the Court cannot deny that plaintiff suffers from various ailments, neither can it substitute plaintiff's opinion that it "is simply not reasonable" that he can sustain the requirements of light work for the ALJ's conclusion, where no medical source rendered an opinion that plaintiff's RFC should be anything less than that found by the ALJ.[4]

As supported by substantial evidence in the record, including the opinions of Dr. Moskowitz and the state agency physicians, the ALJ's findings must be affirmed.

---

[4] Indeed, Dr. Moskowitz concluded that plaintiff could perform the more strenuous medium work requirements. [AR at 106-09.] The ALJ concluded that a lower level of work was appropriate.

## C. THE ALJ PROPERLY REJECTED PLAINTIFF'S CREDIBILITY

The ALJ concluded that plaintiff's subjective complaints and testimony were "less than fully supported by diagnostic medical findings," and are thus not credible. [AR at 23.] The reasons provided by the ALJ for reaching this conclusion include that plaintiff "may be" demonstrating inadequate medical compliance, his low back pain is not corroborated by objective musculoskeletal abnormalities, his hand problems are rebutted by Dr. Moskowitz's report, and his daily activities suggest that he is not disabled. [AR at 23.] Plaintiff contends that none of the reasons supplied by the ALJ to reject his credibility were "legally sufficient." Joint Stip. at 14.

At the hearing, plaintiff testified that he does the grocery shopping, the majority of the cooking, the dishes and the laundry. [AR at 333-34.] He last worked as a cashier at a gas station, where he discovered he had diabetes when he "profusely sweated" and "couldn't drink enough water." His diabetes causes his hands or feet to tingle or go numb on a daily basis, which sometimes results in him dropping things. [AR at 334-35.] In addition, some of the chemicals that were used to clean at the gas station induced shortness of breath. [AR at 334.] As a result of his heart problems, he gets tired and cannot walk for a long period of time. [AR at 336.] He takes pills for chest pain, but the pills cause him to get headaches. [AR at 337.] He suffers from shortness of breath. [AR at 338.] Plaintiff further testified that he can sit for about 20 to 30 minutes, stand for about 20 to 30 minutes, and walk about four blocks at a time. [AR at 339-40.]

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it was here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient); see also Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). Indicia of unreliability upon which an ALJ may rely to reject plaintiff's subjective complaints include: (a) activities inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform

household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."); Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988); Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir. 1988); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that plaintiff received only conservative treatment for back injury is clear and convincing reason for disregarding testimony that plaintiff is disabled). If properly supported, the ALJ's credibility determinations are entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

The ALJ met his burden here of supplying specific, clear and convincing reasons to reject plaintiff's credibility. First, the ALJ accurately noted that plaintiff's subjective complaints and testimony are less than fully supported by diagnostic medical findings. While the ALJ cannot use the lack of medical evidence alone to support a conclusion concerning a plaintiff's credibility, it certainly is a factor that can be considered. "Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone . . . [D]irect medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced . . . The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." Luna v. Bowen, 834 F.2d 161, 164-65 (10th Cir. 1987) (quoting Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986)); see also Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991) (en banc) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added). Thus, the ALJ properly could consider plaintiff's alleged complaints in comparison with the objective medical evidence as one reason to reject his testimony. Although the evidence here supports the existence of severe impairments, the evidence does not support a conclusion of disability. Plaintiff's complaints of back pain are not supported by objective evidence, and his allegations of hand problems are contradicted by Dr. Moskowitz's report that while plaintiff

experienced decreased light touch sensation in his hands and feet, his grip strength in his dominant hand was 80 pounds, and no upper extremity limitations were found. [AR at 23, 108-09.] As noted above, no medical provider has indicated that plaintiff is unable to perform the activities necessary for his past relevant work.

The ALJ also rejected plaintiff's credibility based on his daily activities. Discrepancies in a plaintiff's statements or exaggerated complaints are valid grounds to reject credibility. Fair, 885 F.2d at 603-04. Plaintiff indicated that he cooks, does household chores including the laundry and shopping, can walk four blocks and use public transportation. The ALJ found that plaintiff is able to perform these activities "despite his alleged symptoms and limitations." [AR at 23.] While plaintiff's activities may not in and of themselves show an ability to work, the contrast between his activities and his purported limitations is a valid ground for the ALJ to consider. Finally, the ALJ concluded that plaintiff may not be adequately complying with his recommended treatment. This conclusion is supported by the record. See, e.g., AR at 268 (where plaintiff admits he has not been "compliant with medications or followup"); AR at 183 (where plaintiff admitted he had not been taking his medications as instructed, but was feeling "a lot better" just 5 days later when taking his medications).

Resolving conflicts in the testimony and determining questions of credibility are functions solely of the Commissioner. See Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999). In this case, the ALJ employed ordinary techniques of credibility determination, supported by substantial evidence in the record, to conclude that plaintiff's subjective complaints were not entirely credible. See Fair, 885 F.2d at 604 n.5. The ALJ's findings for rejecting plaintiff's allegations, supported by the record, must be upheld.

## VI.

## **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

1 **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the
2 Judgment herein on all parties or their counsel.

4 DATED: November 30, 2005                                    /S/
                                                                              PAUL L. ABRAMS
5                                             UNITED STATES MAGISTRATE JUDGE